# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**NATIONWIDE PROPERTY & CASUALTY**
**INSURANCE COMPANY**                                                        **PLAINTIFF**

**VS.**                              **CIVIL ACTION NO.** 3:20-cv-347-DCB-JCG

**ROBINSON FOUNDATION REPAIR, LLC,**
**MISS-LOU HOMES, LLC; C. ERIC EADES;**
**SUZANNE EADES; SHIREEN DOGAR; ANDREW SMITH;**
**DEBORAH M. MORALI; ROBERT R. MORALI;**
**RANDEL JAMES AND ALICE JAMES,**
**AS TRUSTEES OF THE RANDEL AND**
**ALICE JAMES REVOCABLE TRUST;**
**ANN ROOT, AS TRUSTEE OF THE ROOT**
**FAMILY TRUST; AND JANCIE SUZANNE COCKRELL;**
**ABC INDIVIDUALS 1-20 AND XYZ ENTITIES 1-20**                     **DEFENDANTS**

## COMPLAINT FOR DECLARATORY JUDGMENT

**COMES NOW,** the Plaintiff, Nationwide Property & Casualty Insurance Company ("Nationwide"), by and through its undersigned counsel, and files this, its Complaint for Declaratory Judgment, and in support hereof would show unto the Court the following, to wit:

### INTRODUCTORY NOTE

1.      This is a declaratory judgment action seeking a declaration as to whether Nationwide Policy Nos. ACP GLKO 3008142421, with policy periods covering from February 17, 2017 to February 17, 2018; ACP GLKO 3018142421, with policy periods covering from February 17, 2018 to February 17, 2019; and ACP GLKO 3028142421, with policy periods covering from February 17, 2019 to February 17, 2020, respectively, (collectively "Nationwide's Policy"; a true and correct copy of which are attached hereto and are incorporated herein by reference as **Composite Exhibit "A"**) provide

coverage for the claims made against Nationwide's insured, Robinson Foundation Repair, LLC, ("Robinson") by C. Eric Eades, Suzanne Eades, Shireen Dogar, Andrew Smith, Deborah M. Morali, Robert R. Morali, Randel James and Alice James, as Trustees of the Randel and Alice James Revocable Trust, Ann Root, as Trustee of The Root Family Trust, and Jancie Suzanne Cockrell ("Underlying Plaintiffs").

## PARTIES

2. Plaintiff, Nationwide Property & Casualty Insurance Company ("Nationwide") is a foreign insurance corporation organized under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio.

3. Defendant, C. Eric Eades an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

4. Defendant, Suzanne Eades, an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

5. Defendant, Shireen Dogar, an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

6. Defendant, Andrew Smith, an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

7. Defendant, Deborah M. Morali, an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

8. Defendant, Robert R. Morali, an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

9. Defendant, Randel James and Alice James, as Trustees of the Randel and Alice James Revocable Trust, an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

10. Defendant, Ann Root, as Trustee of The Root Family Trust, an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

11. Defendant, Jancie Suzanne Cockrell, an adult resident citizen of the State of Mississippi, residing in Rankin County who may be served in accordance with the Federal Rules of Civil Procedure.

12. Defendant, Miss-Lou Homes, LLC, is a Mississippi limited liability company, whose members are all resident citizens of the State of Mississippi, which may be served in accordance with the Federal Rules of Civil Procedure.

13. ABC INDIVIDUALS 1-20 and XYZ ENTITIES 1-20 are individuals or entities whose identities are unknown or whose whereabouts are unascertainable, who, once their identities are make known, or their whereabouts are ascertainable, will be added by amendment, in accordance with Rule 15 of the Federal Rules of Civil Procedure.

14. The Defendants named herein have been named as party Defendants to this civil action so that any Order or Judgment rendered in this matter, as to the existence of coverage owed to Defendant, Robinson Construction and/or Robinson, if

any, by Nationwide, will be binding upon all said Defendants under the theories of res judicata and/or collateral estoppel. Therefore, pursuant to *Coleman v. Mississippi Farm Bureau Ins. Co.*, 708 So. 2d 6 (Miss. 1998), all of said Defendants have been added as parties, pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, as each one of the Defendants' presence is necessary and indispensable for complete and final adjudication of the issues presented herein.

## **JURISDICTION**

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 2201 in that this civil action involves a declaratory judgment. Further, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of costs and interest.

16.     Rule 57 of the Federal Rules of Civil Procedure provides that Nationwide may seek a declaration from this Court as to the rights and obligations among and between the parties in relation to the Nationwide Policy, including, but not limited to, whether Nationwide has an obligation to provide a defense and/or coverage to Robinson as to the claims made against it in the Underlying Plaintiffs' Second Amended Complaint.

17.     An actual controversy exists as between the parties.

## **VENUE**

18.     Venue is proper in this Court, including, but not limited to, pursuant to 28 U.S.C. § 1391 in that one or more of the defendants, herein, resides in the Northern Division of the Southern District of Mississippi.

4

## FACTS: THE SECOND AMENDED COMPLAINT

19. Defendants are owners of six (6) different houses located on the Ross Barnett Reservoir, five (5) of which were constructed by Separate Defendant, Miss-Lou Homes, between 2016 and 2017. One of the houses, that owned by plaintiff, Cockrell, was constructed by Deep South Custom Homes and transferred to plaintiff, Cockrell, in 2019. (Second Amended Complaint a true and correct copy of which is attached hereto and is incorporated herein by reference as **Exhibit "B"**, at ¶¶ 21-23)

20. Each one of the residents has grassed backyards that angle away from the houses to a retaining wall structure that stands approximate 4 feet tall and made of stacked railroad ties. Defendants allege that the backyard retaining wall and slopes were designed and constructed by the respective homebuilder, either Miss-Lou Homes or Deep South Custom Homes. (**Exhibit "B"** at ¶¶ 25-26)

21. Prior to the construction of its houses, defendant, Miss-Lou Homes contracted with defendant, Stanley C. Woodson, Ph.D., P.E., of Woodson Engineering, to provide geotechnical and foundation recommendations for its Residences. (**Exhibit "B"** at ¶ 27) Woodson provided a report titled "geotechnical/foundation recommendations for lots 41, 43, 73, 74, 75, 76, 77, 78, 79, 87, 88 & 989 Windward Bluff, phase I, Rankin County, Mississippi" a copy of that report is attached as Exhibit 1 to the Second Amended Complaint. (**Exhibit "B"** at ¶ 29)

22. On or around July 17, 2019, the retaining wall collapsed in the backyard of plaintiffs Eades, James and Moralis, followed by the collapse of the "large chunks of their sloped backyards." Since then, additional sections of earth have collapsed since the initial event of mid-July causing breaches to move within feet of the Eades, James and Moralis homes. (**Exhibit "B"** at ¶¶ 31-32)

23.     Prior to this, separate plaintiffs, Root and Dogar/Smith, began having problems with their own yards. Specifically, in January 2017, prior to Ms. Root's purchase of her home from Miss-Lou Homes, sinkholes, washouts and other erosion problems developed in the backyard of her residence causing her to make the repair of such sinkholes a material term to her purchase contract with Miss-Lou Homes. Likewise, plaintiff, Dogar/Smith, began experiencing similar problems in their yard no later than February 25, 2018. (**Exhibit "B"** at ¶¶ 33-35)

24.     In addition, the retaining wall and backyard of Defendant, Cockrell's house suffered similar problems and is alleged to be failing or in a state of "imminent failure". (**Exhibit "B"** at ¶ 39, Exh. 3)

25.     Following the retaining wall and slope collapses in July 2019, Defendant, Miss-Lou Homes, contracted with Defendants, Robinson, to perform warranty repairs in November and December 2019 at the Residences of Defendants, Root, Dogar/Smith, Eades, Morali and James. These repairs allegedly not only failed to correct the defective retaining wall and slopes, but they made the situation worse by adding soils on top of the failed slope without first adequately repairing the failed retaining wall. (**Exhibit "B"** at ¶ 41, Exh. 4)

26.     Since July 2019, additional slope collapses have continued to encroach towards Defendants' homes and are allegedly in direct and imminent threat to the foundations of all six Residences. As result, both the Morali and James Residences have experienced "major structural defects" in the form of settlement or movement. (**Exhibit "B"** at ¶ 44)

27.     The Underlying Plaintiffs allege that the failure of the retaining walls and the slopes have "forever reduce the market value of the Residences, even if all necessary

6

repairs are completed, because the failed retaining walls, slopes, and related damages will be required to be disclosed to future potential purchasers of the Residences." (**Exhibit "B"** at ¶ 45)

28.  The Underlying Plaintiffs hired the geotechnical engineering firm, ABTS Consultants, LLC, to determine the cause of the retaining wall collapse and subsequent slope failure, and to propose a plan of repair. ABTS issued a geotechnical investigation report dated September 16, 2019, and supplemented by report dated October 8, 2019. In these reports, ABTS determined that "a more in-depth preconstruction investigation of the site would have revealed the need for special considerations during site development. These considerations would likely have included more design-based approach to any retaining system constructed along the slope adjacent to the lake. This would have resulted in a more robust retaining system that would likely have prevented the failures that are currently being experienced." (**Exhibit "B"** at ¶¶ 57-60, Exh 3 & 5)

29.  ABTS determined that in July or early August 2019, a slope failure occurred along the slope fronting the Ross Barnett reservoir in the backyard of the Residences. The most significant failure scarp appeared to radiate from the Moralis plaintiffs' property extending to the adjacent to Residences. A soil investigation was performed and demonstrated that lean clay fill was present underlying 4 inches of topsoil to a depth of 2 to 2 ½ feet. Underlying these lean clays was expansive, "fat" clays present through the 15-foot terminal depth of the borings. Fat clays below the depths of about 2 ½ to 5 feet represent weathered Yazoo clay. (**Exhibit "B"** at ¶ 65) ABTS analyze the slope stability of the slope in question using soil strength parameters to determine estimated strength profiles and factors of safety.

30. The Underlying Platiniffs allege that, as a result of these analyses, prior to the construction of the Residences, the lots upon which the Residences were built were "relatively stable", in other words, the force of the slope is tending to resist rotational or sliding failure or greater than the force is tending to cause the failure. However, after the construction of the Residences, the slopes behind the Residences of Defendants, Root, Dogar/Smith, Eades, Morali and James became unstable. (**Exhibit "B"** at ¶¶ 66-70)

31. The slope analysis revealed a factor of safety under 1.0 suggesting "imminent slope failure". As such, the retaining walls and slopes installed by Defendants, Miss-Lou Homes and Deep South Custom Homes "were destined to fail and have in fact failed as could have been predicted by the testing and models relied on in the ABTS Report." (**Exhibit "B"** at ¶¶ 71-73)

32. According to ABTS, and is alleged by the Underlying Plaintiffs, the conditions causing the retaining wall and slope failures were precipitated by change in the general topographic conditions of the site as well as the addition of overburdened loading associated with development of the site for construction. Further, ABTS concluded that a more in-depth pre-construction investigation of the site would reveal the need for special considerations during site development which would have included more design-based approach to any retaining system constructed along the slope adjacent to the lake and resulted in a more robust retaining system that would likely have prevented the failures in question. The Underlying Plaintiffs allege, that the retaining wall and slope failures were the inevitable result of Miss-Lou Holmes and /or Deep South Custom Homes' failure to conduct an adequate pre-construction

investigation of the subsurface soils, and the resulting defects and inadequacies in the design and construction of the retaining walls and slope. (**Exhibit "B"** at ¶¶ 74-76)[1]

33. As a result of these allegations, plaintiffs make the following claims against Nationwide's insured, Robinson: Breach Of Contract/Warranties (Count I); and negligence/gross negligence (Count II).

34. As to Robinson, the Underlying Plaintiffs specifically allege that Robinson breached its warranties to perform repairs to the Underlying Plaintiffs' homes and yards in a workmanlike manner, suitable for habitation, and their duty to perform the repairs with care, skill and regional expertise. (Second Amended Complaint at ¶ 116)

35. Further, the Underlying Plaintiffs allege that Robinson, amongst others, had a duty to perform investigations, construction and repairs of the Residences and lots in a workmanlike manner and suitable for habitation, that it further had a duty to perform investigations, construction and repairs of the Residences, the subdivision and plaintiffs' lots with care, skill and regional experience, that it further had a duty to construct and repair the Residences and lots in compliance with applicable building standards, and that amongst others, Robinson failed to observe each of the above duties and proximate cause plaintiffs damages, entitling plaintiffs to an award of punitive damages. (**Exhibit "B"** at ¶¶ 131-135)

36. For all these things, the Underlying Plaintiffs seek judgment from, amongst others, Robinson, for damages, to include actual and punitive damages, for the cost of repair of the Residences plus "the difference between the market value of the

---

[1] Elsewhere within their second amended complaint, the Underlying Plaintiffs continue that, "as a result of these omissions or inadequate performance of a pre-construction investigations of the subsurface soils at the residences, and/or failure to properly account for known subsurface conditions, the design and installation of the retaining walls and slope in the backyards of the residences were inadequate and defective. (**Exhibit "B"** at ¶ 93)

Residences without the damage thus the market value of the Residence ... after all reasonable and necessary repairs have been made". (**Exhibit "B"** at ad damnum a)

## NATIONWIDE'S POLICY

37. Nationwide issued two policies (Policy Nos. 3D6-41-97-09 and 4D1-69-89) with effective dates of coverage from November 1, 2008 to January 19, 2009 and September 17, 2009 to April 19, 2010, to Robinson Construction. Because the two policies are substantively similar, Nationwide will refer to them in the singular.

38. Nationwide's Policy provides, in part, as follows:

**A. Coverage under the Insuring Agreement**

Part A of Nationwide's Policy provides the following in its Insuring Agreement:

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages and "defense expenses" is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements and "defense expenses" under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

10

 b. This insurance applies to "bodily injury" and "property damage" only if:

  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  (2) The "bodily injury" or "property damage" occurs during the policy period; and

  (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

 c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

 d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

11

        (2)    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        (3)    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    e.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

*See* **Exhibit "A"**, Section 1—Coverages, Coverage A, Para. 1, Insuring Agreement.

    39.    Within the Nationwide Policy, "bodily injury" is defined as "physical injury, sickness, or disease to a person and if arising out of the foregoing, mental anguish, mental injury, shock, or humiliation, including death at any time resulting therefrom."  *See* **Exhibit "A"**, Section V. Definitions at ¶3, as amended by the Contractors Enhancement Endorsement (CG 72 88 12 16).

    40.    The allegations contained in the Second Amended Complaint do not make a claim for damages because of "bodily injury" as that term is defined in Nationwide's Policy.

    41.    Within the Nationwide Policy, "property damage" is defined as being related to "tangible property."  *See* **Exhibit "A"**, Section V. Definitions at ¶17. Specifically, Nationwide's Policy defines "property damage" as

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

    ...

**Exhibit "A"**, Section V, Definitions at ¶17.

42. To the extent that the damages claimed by Plaintiffs constitute damages because of "bodily injury" or "property damage", that injury or damage must be caused by an "occurrence", as that term is defined under the Nationwide Policy, for coverage to lie.

43. The Nationwide Policy defines "occurrence" as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> An accident shall include:
>
> a. "Bodily injury," or
>
> b. "Property damage" to:
>
>   (1) The property of others, or
>
>   (2) "Your work", if "your work" was:
>
>     (a) Damaged by the work of a subcontractor who performed work on your behalf in the construction, alternation, renovation, repair or maintenance or a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance or other improvement to real property, including any moving, demolition or excavation, and;
>
>     (b) The resulting "property damage" is included in the "products-completed operations hazard"
>
> **All terms and conditions of this policy apply unless modified by this endorsement.**

**Exhibit "A"**, Section V, Definitions at ¶13, as modified by the "Definition of Occurrence

13

Amendatory Endorsement for Construction Defects" endorsement, (CG 72 87 12 11).

44. The Second Amended Complaint does not allege an "accident" giving rise to an "occurrence" as those terms are defined by Nationwide's Policy.

45. Nationwide's Policy provides that coverage is afforded for "bodily injury" or "property damage" that occurs "during the policy period." *See*, **Exhibit A**, Section 1—Coverages, Coverage A, ¶1 (b)(2).

46. Nationwide's Policy states, in pertinent part as follows:

This insurance does not apply to: . . .

    a.    Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**Exhibit A**, Nationwide's Policy Section I, Coverage A- at ¶ 2. a.

47. The claims made in the Second Amended Complaint do not constitute an "occurrence" under Nationwide's Policy, as such, these claims would, also, thus, be subject to the "Expected or Intentional Injury" exclusion as well.

48. In addition to the coverages contained in Part A, the Policy also contains the following coverage in Part B, which provides as follows:

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against ant "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages and "defense expenses" is limited as described in Section III - Limits Of Insurance; and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements and "defense expenses" under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

  b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**Exhibit A**, at Section I, Coverage B Personal and Advertising Injury Liability, ¶1. Insuring Agreement.

 49. Nationwide's Policy defines "personal and advertising injury" as follows:

  Injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premise that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

15

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*See* **Exhibit A**, Section V, at Paragraph 14.

  50. The allegations contained in the Second Amended Complaint do not trigger coverage under Part B to Nationwide's Policy.

  51. In addition to the above, Nationwide's Policy contains an endorsement that both restricts and excludes coverage in the instant case as set forth herein below:

   A. The following exclusion is added to Paragraph **2. Exclusions of Section I – Coverage A Bodily Injury And Property Damage Liability** of the Commercial General Liability Coverage Part and Paragraph **2. Section I – Coverages Products/Completed Operations** of the Products/Completed Operations Coverage part:

    2. Exclusions

     This insurance does not apply to:

     **"Subsidence" Of Land**

     "Property Damage" include within the "products-completed operations hazard"[2] arising out of the "subsidence" of land.

---

[2] Nationwide's Policy defines "Products-completed operations hazard" as follows:

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    B.    For the purpose of this endorsement, Paragraph **(b)(3)** of Definition **16**. "Products-completed operations hazard", Section V – Definitions, of the Commercial General Liability Coverage part and Paragraph (b)(3) of Definition **12**. "Products completed operations hazard", **Section V - Definitions** of the Product/Completed Operations Liability Coverage Part are deleted.

    C.    The following definition is added to **Section V – Definitions** of the Commercial General Liability Coverage Part and the Products/Completed Operations Liability Coverage Part:

"Subsidence" means earth movement, resulting from:

    a.    Any natural event, or

    b.    Any artificial cause, specifically including "your work"[3] or the work of any other person or organization

---

    (a)    When all of the work called for in your contract has been completed.

    (b)    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c)    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

...

*See* Nationwide's Policy, Section V Definitions ¶ 16.

---

[3]    "Your work":

    a.    Means:
        (1)    Work or operations performed by you or on your behalf; and
        (2)    Materials, parts or equipment furnished in connection with such work or operations.

> Earth movement includes, but is not limited to, landslides, mud flow, erosion, contraction, settling, sinking, rising or shifting.
>
> **All terms and conditions of this policy apply unless modified by this endorsement.**

Exhibit "A", Exclusion – Subsidence of Land Endorsement (CG 74 20 06 16).

52. The claims made for "property damage" in the Second Amended Complaint, in addition to not being caused by an "occurrence" as that term is defined by Nationwide's Policy, is further subject to and excluded by the Subsidence of Land Endorsement to Nationwide's Policy.

### COUNT I– DECLARATORY JUDGMENT AS TO THE CLAIMS MADE WITHIN THE SECOND AMENDED COMPLAINT

53. Nationwide incorporates the above allegations herein by reference, and would further show as follows:

54. The terms, conditions, exclusions and endorsements of Nationwide's Policy are clear and unambiguous.

55. Nationwide's Policy does not provide coverage for the claims, demands and damages made and/or sought against Defendant, Robinson in the Second Amended Complaint.

**WHEREFORE, PREMISES CONSIDERED**, Nationwide prays that this Court:

A. Declare that the terms and conditions of Nationwide's Policy relieve Nationwide of any duty which otherwise exists to provide liability coverage, including a

---

b. Includes:
  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
  (2) The providing of or failure to provide warnings or instructions.

*See* Exhibit "A", Section V Definitions ¶ 22.

duty of defense and/or indemnification to Robinson for any and all claims made in the Second Amended Complaint; and

B. Enjoin each and every one of these Defendants from either initiating or prosecuting a suit or any other action, including any post-judgment remedial action or garnishment against Nationwide, or one another, until such time as this Court declares the rights and duties of the parties requested above; and

C. Advance this cause on the Court's calendar as authorized by Federal Rule of Civil Procedure 57;

D. Grant Nationwide such other general relief as this Court deems appropriate; and

E. Declare Robinson are not entitled to defense costs, including but not limited to attorney's fees and expenses, from Nationwide incurred in defense of the instant action for declaratory judgment.

**FURTHERMORE**, Nationwide prays that this Complaint for Declaratory Relief be received and that the declaratory relief be entered on each of the issues set forth above.

**RESPECTFULLY SUBMITTED** on this the 18th day of May, 2020.

                          NATIONWIDE PROPERTY & CASUALTY
                          INSURANCE COMPANY

                        By:   */s/ Clyde X. Copeland, III*
                                CLYDE X. COPELAND, III

OF COUNSEL:

CLYDE X. COPELAND, III, (MSB# 10322)
JERNIGAN COPELAND ATTORNEYS, PLLC
587 Highland Colony Pkwy.
P.O. Box 2598
Ridgeland, Mississippi 39158-3380
Telephone: (601) 427-0048
Facsimile:  (601) 427-0051
ccopeland@jcalawfirm.com